### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:15 CR00067 (WWE) |
| V. | : | |
| ROBERT GENTILE | : | DECEMBER 14, 2015 |

### MOTION FOR DISCLOSURE OF
### INFORMATION MATERIAL TO THE DEFENSE

Defendant in the above-captioned matter Robert Gentile ("Gentile") has pending a motion to dismiss, on the grounds of the doctrine of outrageous government conduct. In said motion and the accompanying memorandum of law both dated July 21, 2015 (Docket Entry Nos. 29 and 20), Gentile argued that The Government has engineered the instant prosecution solely for the purpose of pressuring Gentile into cooperating with a wholly unrelated investigation. The Government's excessive involvement in the alleged offense conduct, where the intent and object of the arrest and prosecution was to coerce and compel Gentile's cooperation in that unrelated matter, is a significant violation of due process of law. The actual subject of the Government's interest in

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

Gentile is the robbery of over a dozen paintings from the Isabella Stewart Gardner Museum in Boston in 1991, a crime which the Government is convinced Gentile is in a position to help it solve. The wholly pretextual nature of the Government's case against Gentile, which involves the alleged sale of a handgun to a confidential informant, set by the Government to ensnare Gentile, is also the basis for Gentile's defense at trial of entrapment.[1]

By letters dated October 22 and October 30, 2015, the undersigned requested the following discovery materials from the Government pursuant to F. R. Crim. P. 16(a) and this Court's Standing Order on Discovery in the Local Rules of Criminal Procedure, for use in the pending hearing before this Court on the motion to dismiss scheduled for January 6, 2016, including:

1.      Any reports by the Government (302's) describing the information relayed to the Government by any and all cooperating witnesses and/or confidential informants concerning Mr. Gentile, insofar as such information relates to the subject matter of Gentile's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of said paintings;

---

[1] On this date, by letter, the undersigned has advised the Government that Gentile will put forth an affirmative defense of entrapment at trial.

2

2.  Any and all audio or video recordings containing conversations between Mr. Gentile and any cooperating witnesses/confidential informants insofar as such information relates to the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of said paintings;

3.  Any and all transcripts of audio or video recordings containing conversations between Mr. Gentile and any cooperating witnesses/confidential informants insofar as such information relates to the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of paintings; and

4.  Any written cooperation agreements with any confidential informants and/or cooperating witnesses who provided information to the Government insofar as such information relates to the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of paintings.

On November 5, 2015, the Government responded by letter, advising that Gentile's requests were overly broad and went way beyond the scope of what is called for under the cited Rules.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

A hearing is to be held on January 6, 2016 on Gentile's motion to dismiss. The requested discovery must be disclosed at a decent interval prior to the hearing. Jury selection for the trial is to commence on January 25, 2016.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides in relevant part that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense. In addition, pursuant to Rule 16(d), the Court may enter an order compelling such disclosure.

The government is constitutionally obligated to disclose evidence favorable to the accused when such evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963); U.S. v. Gil, 297 F.3d 93, 101 (2d Cir. 2001). The prosecutor's affirmative duty to disclose such information obtains even if no specific request for disclosure is made by the defendant. United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1998). When the government's failure to disclose exculpatory information rises to the level of a violation of due process, the prosecutor's good faith or lack of bad faith is irrelevant. Id. "To the extent that the prosecutor knows of material evidence favorable

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant . . . Information coming within the scope of this principle . . . includes not only evidence that is exculpatory, . . . but also evidence that is useful to impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998).  Such disclosures "must be sufficiently specific and complete to be useful." United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2008).

Brady material need not be admissible as evidence. See Rodriguez, 496 F.3d. at 226, n.4. See also U.S. v. Gil, 297 F.3d at 104 (Brady material is material if it could lead to admissible evidence or would be an effective tool at cross-examination). The prosecutorial duty to disclose such helpful information does not require the Government to disclose all exculpatory and impeachment material; it need only disclose material that, if suppressed, would deprive the defendant of a fair trial. See United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001)   "In the context of Brady, a defendant is deprived of a fair trial only where there is a reasonable probability that the government's suppression affected the outcome of the case or where the suppressed

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (citations and internal quotations omitted). Id.

The Second Circuit has held that Brady disclosures need not be immediately made upon demand of the defendant, so long as such disclosure is made in time for its effective use at trial. U.S. v. Coppa, 267 F.3d.at 142, 146. However, as to the timing of such disclosure, the Second Circuit has also held that the Government must disclose Brady materials "in a manner that gives the defendant a reasonable opportunity either to use the evidence at trial or to use the information to obtain evidence for use at trial . . . [disclosure must be made] in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously," for example, not on the eve of trial, or when the trial was under way, or not such a partial disclosure of a potential witness's knowledge that the defendant was left to gamble on what the witness would say. See United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2008). "The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an opportunity for use." (citations and internal quotation marks omitted) Id. Where the disclosure of Brady material could have led to specific exculpatory information with a material bearing on the defendant's preparation of his case at trial, late disclosure of

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

such material may unduly prejudice the defendant. See Leka v. Fortuondo, 257 F.3d 89, 99-100 (2d Cir. 2001).

Under such authority, the grounds for Gentile's discovery requests are self-evident; his argument for dismissal based on outrageous Government conduct and his entrapment defense both hinge on the Government's ongoing interest in Mr. Gentile with respect to the stolen paintings. The Government has already admitted that it withheld a recording of Mr. Gentile conversing with Government informants which contained information relevant to the instant prosecution, and duly released it. An inference exists that there is a trove of Government evidence that addresses Gentile's purported involvement with the stolen paintings, and is therefore necessary to Gentile's evidentiary showings at the pending hearing on his motion to dismiss, and his entrapment defense at trial.

Moreover, since the filing of the motion to dismiss, the undersigned has learned that the connection between the two investigations may be closer than Gentile's memorandum of law in support of motion to dismiss suggests, and seeks to prove the following narrative of continuing questionable conduct on the Government's part, as well as evidence of entrapment.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Upon information and belief, the Government's Confidential Human Source ("CHS") approached Gentile proposing a variety of criminal schemes at the Government's behest, all of which Gentile initially refused to participate in. On information and belief, one of these proposed schemes involved a marijuana distribution deal, operating out of Arizona. On information and belief, accompanying the CHS was another government informant, CHS2. CHS 1 and CHS2, ignoring Gentile's prior refusal, began making cash payments to him, unbidden, and advised him that said payments constituted "tribute" from source of the marijuana in Arizona out of the proceeds from the drug deal. On information and belief, the money in fact came from the FBI. The deal was fictitious and nonexistent, concocted by the Government, whose agents sent the CHS and CHS2 to Gentile fully scripted. The CHS is a convicted murderer, related to a triple slaying in connection with narcotics. CHS2 was only slightly less unsavory, and upon information and belief has represented that he was a "made man" in La Cosa Nostra.

Upon information and belief, after several months of keeping Gentile apprised of the fictitious Arizona marijuana deal and making "tribute payments" to him from the "proceeds" of the deal, the CHS and CHS2 raised with Gentile, at the behest of their government handlers, the possibility that their fictitious Arizona marijuana connection

8

desired to purchase from Gentile paintings stolen from the Isabella Stewart Gardner Museum that they believed to be in his possession. On information and belief, initially, Gentile refused to get involved, or to otherwise expand his role in the bogus drug scheme beyond collecting the unsolicited cash payments.

Upon information and belief, the CHS and CHS 2 subsequently introduced Gentile to a person known to the latter only as "Nick." On information and belief, Nick was and is a government agent, either from the FBI or the DEA. On information and belief, posing as another party to the fictitious Arizona marijuana deal, Nick advised Gentile that failure to sell the Arizona connection the paintings would result in the supply of drugs being cut off, and therefore the cash payments to Gentile would end. This time, on information and belief, Gentile reverted to his usual behavior when he sensed someone wanted to pay for the paintings he did not have. On information and belief, he attempted to milk the scam for all it was worth, in hopes of picking up some quick cash. On information and belief, he proceeded to lead his merry band of informers and double agents on a merry hunt for nonexistent paintings. On information and belief, for months, he informed the CHS, CHS2 and Nick that he could lead them to the paintings, but inevitably the promised day would then be postponed - but not

9

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

before Gentile secured the next installment of "tribute money" from the fictitious Arizona marijuana connection.

Upon information and belief, at some point in time, Gentile recognized he could no longer maintain the pretense that he could lead his companions to the Gardner Museum paintings. He cut off contact with the government agents and informants.

Subsequently, the CHS, an old friend of Gentile's, sought him out in early 2015, still acting in his capacity as the Government's informant, and wearing a recording device, with the intent of capturing Gentile on tape selling him a firearm, thereby furnishing the basis for the instant prosecution. On information and belief, the fictional narrative that the CHS spun for Gentile explaining his need for a gun arose from precisely the same bogus pot and paintings transactions set in motion by the Government some months earlier. In the transcripts of consensual recordings of Gentile conducted by the CHS, the latter explains "At least they get paid, otherwise they're going to kill me." (Tr. 2/22/15, p. 22). Less than a minute later, Gentile asks the CHS "you got a piece? I ain't got any right now," and then says "See if you can find one,…see if you can get one." Tr. 2/22/15, p. 23. Ten minutes later, the two men start discussing guns. The Government claims that in the ensuing conversation Gentile and the CHS agreed that Gentile would supply him with a handgun. The purported

*Rome McGuigan, P.C.* • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

transaction allegedly occurred a week later, and the Government bases the instant indictment on said alleged transaction.

On information and belief, the evidence Defendant now seeks are recordings and 302s that will reveal Gentile refusing to involve himself in myriad illegal activities proposed by the government's informants. On information and belief, the government tried to snare him in the "drug money for paintings" scam, and finally, when that failed, they had the CHS claim the prior fake transaction had put the informant in danger, and he needed a favor from an old friend, Gentile, in the form of the firearms transaction that ultimately led to the alleged instant offense conduct. On information and belief, the Government hatched fictitious scheme after fictitious scheme to ensnare Gentile, all of them refused by him, until the CHS came to him and stated that these refusals had now put his life at risk, and asking for Gentile to sell his old friend a gun with which to protect himself. The Government has tenaciously dedicated itself to implicating Gentile, now 80 years old and in declining health, in fictitious criminal schemes to solve an unrelated twenty five year old crime.

Finally, the Second Circuit has held that when the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

material than if the evidence of guilt is thin. United States v. Gil, 297 F.3d at103.[2] In the instant case, the sole witness of the purported firearms transaction, the CHS, is deceased; the recordings of the CHS and Gentile conversing are barely audible; and the DNA testing performed on the subject gun and related objects appears to be inconclusive. To prove its circumstantial case, the Government will therefore in all likelihood have to rely on the once-removed testimony of its agents' who acted as the CHS's handler pursuant to the purported firearms transaction. The full extent of such agents' activities arising out their setting the CHS after Gentile, and the intersection of the bogus Arizona drug deal, the related offense conduct regarding the purported gun sale, and the intrusion of the paintings into both overlapping schemes, are therefore appropriate subjects for cross-examination, as they go Gentile's related defenses of outrageous government misconduct and entrapment. The information requested is therefore material and necessary to Gentile's defense.

---

[2] The Second Circuit's standard for the materiality of impeachment evidence is similar: In general, impeachment evidence has been found to be material "where the witness supplied the only evidence linking the defendant(s) to the crime, ... or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." Payne, 63 F.3d at 1210 (internal quotations and citations omitted); see also Avellino, 136 F.3d at 256. On the other hand, impeachment evidence is not material if the testimony of the witness was corroborated, or when the suppressed evidence "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Payne, 63 F.3d at 1210 (internal quotations and citations omitted). Undisclosed impeachment evidence is not material under Brady when, "although possibly useful to the defense, it is not likely to have changed the verdict." Avellino, 136 F.3d at 257.

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

WHEREFORE, for all of the reasons forthwith, Defendant Robert Gentile's motion to compel production should be granted.

13

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

DEFENDANT,
ROBERT GENTILE


By: ___/s/ A. Ryan McGuigan___
A. Ryan McGuigan
Federal Bar No. ct24571
Rome McGuigan, P.C.
One State Street, 13th Floor
Hartford, CT 06103-3101
860-549-1000
860-724-3921 (fax)
rmcguigan@rms-law.com

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2015, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ A. Ryan McGuigan
A. Ryan McGuigan

16289-3/LX4658

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726