### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **Case No. 3:15 CR00067 (WWE)** |
| **V.** : | |
| **ROBERT GENTILE** : | **FEBRUARY 1, 2016** |

### MOTION FOR DISCLOSURE OF
### INFORMATION MATERIAL TO THE DEFENSE

Defendant in the above-captioned matter Robert Gentile ("Gentile") hereby moves this court for an order compelling the Government to produce previously requested discovery materials necessary to Gentile's defense of entrapment, as such defense will be pursued at trial. By letters dated October 22 and October 30, 2015, the undersigned requested certain discovery materials from the Government pursuant to F. R. Crim. P. 16(a) and this Court's Standing Order on Discovery in the Local Rules of Criminal Procedure, for use in a hearing before this Court on the motion to dismiss on the basis of outrageous government conduct scheduled for (and subsequently conducted on) January 21, 2016. Gentile renewed this request by means of a Motion for Disclosure of Information Material to the Defense filed with this Court dated December 14, 2015 (Docket Entry No. 53.00). In said motion, Gentile argued that the information sought was necessary for both an evidentiary hearing pursuant to his motion to dismiss, and for the aforementioned trial defense of entrapment.

Gentile specifically argued that, on information and belief, the alleged firearms transaction that provides the basis for the instant indictment was a product of a

1

broader criminal transaction, involving a marijuana trafficking operation, whose architects first paid tribute cash to Gentile, and then threatened to withdraw the payments, and worse, unless Gentile produced the Gardner Museum paintings; Gentile further argued that, upon information and belief, the marijuana deal, the tribute money paid to Gentile pursuant to the marijuana deal, the gun transaction arising out of exigencies in the marijuana deal, and the demand for the paintings by the purported architect of the marijuana deal, were all fabricated and created out of whole cloth by the government, with every single conspirator acting at the behest of the government, except the true target, Mr. Gentile. The undersigned averred that without a complete record of *all* of the efforts by the government to recruit Mr. Gentile in artificially constructed criminal activities following his release from prison after encounters with the government's last such *commedia dell' arte* cavalcade of harlequins, pulcinellas, and pierrots, a defense of entrapment, with the stolen paintings as the sole source of governments continuing interest in Gentile, could not be effectively explored.

At the hearing, the government proceeded to confirm the factual underpinnings of the undersigned's theory of the case, as Assistant United States Attorney Durham conceded that the government had been dispatching informants to prod Gentile into talking about the paintings since his prior stint in prison, for another offense that arose out of a government-concocted, informant-driven scheme to entice Gentile into committing crimes with the purpose of leveraging his cooperation with the museum investigation after arrest. AUSA Durham further confirmed that the government was

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

indeed the puppet-master behind the fictitious marijuana deal, and hence the subject firearms transaction, and that the government had injected the paintings into the deal, via a demand that Gentile produce them from the spectral drug kingpin. AUSA Durham confirmed that the government's interest in Gentile is based upon its belief that he can lead it to the paintings, and that the government has believed since 2010 that the best way to effectuate Gentile's cooperation is by sending informants to coax him into fictitious, government-created criminal activity, so that upon arrest and indictment the 80 year-old, wheelchair-bound Gentile could look forward to death in prison unless he tells all that he allegedly knows.

Gentile has maintained since his prior arrest that he has already disclosed all that he knows about the Gardner Museum robbery.

The government indicated that it will not disclose any materials pertaining to the government's ongoing investigation of the robbery in 1991 of 13 paintings from the Isabella Stewart Gardner Museum in Boston, and Gentile's purported connection to the robbery. The government has indicated that it will not disclose information pertaining to the introduction of the stolen paintings into its play-acted marijuana deal. The government has indicated that it will not disclose the sum total of informant activity concerning additional individuals that it directed to Gentile with the purpose of enticing him into criminal activity, or otherwise cajoled him about the paintings.

All of this information is legitimately necessary for the undersigned to competently mount an entrapment defense at trial, particularly because the

*Rome McGuigan, P.C.* • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

government asserts that the individuals that it has admitted thus far that it sent to Gentile, Mr. Bowes and Mr. Mozzicato, were not acting as government agents, informants, and/or confidential human sources pursuant to a cooperation agreement; if such informants were not "government agents," they cannot have entrapped him. On information and belief, such agents did in fact interact with Gentile, and the government does not wish to expose them to the light.

At the hearing before this court on Gentile's motion to dismiss, on oral motion, the undersigned renewed and expanded Gentile's requests for government disclosure, and now formally moves that this court enter an order that the government disclose the following, as such information is necessary for Gentile's entrapment defense at trial:

1. Any reports by the Government (302's) describing the information relayed to the Government by any and all cooperating witnesses and/or confidential informants concerning Mr. Gentile, including but not limited to Sammy Mozzicato, Chester "Chet" Scarborough, and Ronnie Bowes: a) insofar as such information relates to the subject matter of Gentile's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of said paintings; b) insofar as such information relates to a purported marijuana deal concerning Bowes and Mozzicato, and originating out of Arizona; and c) insofar as such information relates to efforts by such cooperating witnesses and/or confidential informants to solicit Mr. Gentile's involvement in criminal

4

activity between his prior release from prison in early 2014 and the instant arrest in spring, 2015.

    2.    Any and all audio or video recordings containing conversations between Mr. Gentile and any cooperating witnesses/confidential informants, including but not limited to Sammy Mozzicato, Chester "Chet" Scarborough, and Ronnie Bowes: a) insofar as such information relates to the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of said paintings; b) insofar as such information relates to a purported marijuana deal concerning Bowes and Mozzicato, and originating out of Arizona; and c) insofar as such information relates to efforts by such cooperating witnesses and/or confidential informants to solicit Mr. Gentile's involvement in criminal activity between his prior release from prison in early 2014 and the instant arrest in spring, 2015.

    3.    Any and all transcripts of audio or video recordings containing conversations between Mr. Gentile and any cooperating witnesses/confidential informants , including but not limited to Sammy Mozzicato, Chester "Chet" Scarborough, and Ronnie Bowes: a)insofar as such information relates to the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of paintings; b) insofar as such information  relates to a purported marijuana deal concerning Bowes and Mozzicato; and originating out of Arizona; and c) insofar as

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

such information relates to efforts by such cooperating witnesses and/or confidential informants to solicit Mr. Gentile's involvement in criminal activity between his prior release from prison in early 2014 and the instant arrest in spring, 2015.

4. Any written cooperation agreements with any confidential informants and/or cooperating witnesses, including but not limited to Sammy Mozzicato, Chester "Chet" Scarborough, and Ronnie Bowes, who provided information to the Government insofar as such information relates to: a) the subject matter of Defendant's motion to dismiss, the investigation of the theft of paintings from the Isabella Stewart Gardner Museum in 1991 and the investigation into the recovery of paintings; b) insofar as such information relates to relates to a purported marijuana deal concerning Bowes and Mozzicato, and originating out of Arizona; and c) insofar as such information relates to efforts by such cooperating witnesses and/or confidential informants to solicit Mr. Gentile's involvement in criminal activity between his prior release from prison in early 2014 and the instant arrest in spring, 2015.

5. The names and addresses of any confidential human sources, confidential informants, cooperating witnesses and government agents dispatched by the government to contact the defendant between his prior release from prison in early 2014 and the instant arrest in spring, 2015, including but not limited to Sammy Mozzicato, Chester "Chet" Scarborough, and Ronnie Bowes.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides in relevant part that "[u]pon a defendant's request, the government must permit the

6

defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense. In addition, pursuant to Rule 16(d), the Court may enter an order compelling such disclosure.

The government is constitutionally obligated to disclose evidence favorable to the accused when such evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963); U.S. v. Gil, 297 F.3d 93, 101 (2d Cir. 2001). The prosecutor's affirmative duty to disclose such information obtains even if no specific request for disclosure is made by the defendant. United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1998). When the government's failure to disclose exculpatory information rises to the level of a violation of due process, the prosecutor's good faith or lack of bad faith is irrelevant. Id. "To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant . . . Information coming within the scope of this principle . . . includes not only evidence that is exculpatory, . . . but also evidence that is useful to impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998). Such disclosures "must be sufficiently specific and complete to be useful." United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2008).

7

Brady material need not be admissible as evidence. See Rodriguez, 496 F.3d. at 226, n.4. See also U.S. v. Gil, 297 F.3d at 104 (Brady material is material if it could lead to admissible evidence or would be an effective tool at cross-examination). The prosecutorial duty to disclose such helpful information does not require the Government to disclose all exculpatory and impeachment material; it need only disclose material that, if suppressed, would deprive the defendant of a fair trial. See United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001)  "In the context of Brady, a defendant is deprived of a fair trial only where there is a reasonable probability that the government's suppression affected the outcome of the case or where the suppressed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (citations and internal quotations omitted). Id.

The Second Circuit has held that Brady disclosures need not be immediately made upon demand of the defendant, so long as such disclosure is made in time for its effective use at trial. U.S. v. Coppa, 267 F.3d.at 142, 146. However, as to the timing of such disclosure, the Second Circuit has also held that the Government must disclose Brady materials "in a manner that gives the defendant a reasonable opportunity either to use the evidence at trial or to use the information to obtain evidence for use at trial . . . [disclosure must be made] in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously," for example, not on the eve of trial, or when the trial was under way, or not such a partial disclosure of a potential witness's knowledge that the defendant was left to

8

gamble on what the witness would say. See United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2008). "The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an opportunity for use." (citations and internal quotation marks omitted) Id. Where the disclosure of Brady material could have led to specific exculpatory information with a material bearing on the defendant's preparation of his case at trial, late disclosure of such material may unduly prejudice the defendant. See Leka v. Fortuondo, 257 F.3d 89, 99-100 (2d Cir. 2001).

Under such authority, the grounds for Gentile's discovery requests are self-evident; his entrapment defense hinges on the Government's ongoing interest in Mr. Gentile with respect to the stolen paintings. The Government has already admitted that its *modus operandi* with respect to Gentile has been enticement into criminal activity, with the paintings as the goal. An inference exists that there is a trove of Government evidence that addresses Gentile's purported involvement with the stolen paintings, and is therefore necessary to Gentile's evidentiary showings at the trial as to entrapment.

Finally, the Second Circuit has held that when the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

material than if the evidence of guilt is thin. United States v. Gil, 297 F.3d at103.[1] In the instant case, the sole witness of the purported firearms transaction, the CHS, is deceased; the recordings of the CHS and Gentile conversing are barely audible; and the DNA testing performed on the subject gun and related objects appears to be inconclusive. To prove its circumstantial case, the Government will therefore in all likelihood have to rely on the once-removed testimony of its agents' who acted as the CHS's handler pursuant to the purported firearms transaction. The full extent of such agents' activities arising out their setting the CHS after Gentile, and the intersection of the bogus Arizona drug deal, the related offense conduct regarding the purported gun sale, and the intrusion of the paintings into both overlapping schemes, are therefore appropriate subjects for cross-examination, as they go Gentile's defense of entrapment. The information requested is therefore material and necessary to Gentile's defense.

In correspondence, the government has asserted that much of the information sought herein is protected under the informer's privilege. See Roviaro v. United States, 353 U.S. 53 (1957). However, in that decision the United States Supreme Court invoked an

---

[1] The Second Circuit's standard for the materiality of impeachment evidence is similar: In general, impeachment evidence has been found to be material "where the witness supplied the only evidence linking the defendant(s) to the crime, ... or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." Payne, 63 F.3d at 1210 (internal quotations and citations omitted); see also Avellino, 136 F.3d at 256. On the other hand, impeachment evidence is not material if the testimony of the witness was corroborated, or when the suppressed evidence "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Payne, 63 F.3d at 1210 (internal quotations and citations omitted). Undisclosed impeachment evidence is not material under Brady when, "although possibly useful to the defense, it is not likely to have changed the verdict." Avellino, 136 F.3d at 257.

10

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

exception to such a privilege that is relevant to the instant case. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." Id. at 60-61. In Roviaro, where entrapment was at issue, disclosure was mandated, and such is the case here. Id. at 64.

WHEREFORE, for all of the reasons forthwith, Defendant Robert Gentile's motion to compel production should be granted.

DEFENDANT,
ROBERT GENTILE

By:   /s/ A. Ryan McGuigan
A. Ryan McGuigan
Federal Bar No. ct24571
Rome McGuigan, P.C.
One State Street, 13th Floor
Hartford, CT 06103-3101
860-549-1000
860-724-3921 (fax)
rmcguigan@rms-law.com

Rome McGuigan, P.C.  •  Attorneys at Law
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2016, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

                                                            /s/ A. Ryan McGuigan
                                                            A. Ryan McGuigan

M10090

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726