

United States Department of Justice

*United States Attorney*
*District of Connecticut*

**FILED**

2017 APR -6  P 2: 50

US DIST...

*Connecticut Financial Center*
*157 Church Street, 25th Floor*
*New Haven, Connecticut  06510*

(203) 821-3700
Fax (203) 773-5376
www.justice.gov/usao-ct

April 6, 2017

A. Ryan McGuigan
Rome McGuigan, P.C.
One State Street, 13th Floor
Hartford, Connecticut  06103

      Re:    <u>**United States v. Robert V. Gentile**</u>
                 **Criminal No. 3:15CR67 (RNC)**

             <u>**United States v. Robert V. Gentile**</u>
             **Criminal No. 3:16CR106 (RNC)**

Dear Mr. McGuigan:

      This letter confirms the plea agreement between your client, Robert V. Gentile (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the referenced criminal matters.

### THE PLEA AND OFFENSE

      Robert V. Gentile agrees to plead guilty to Count One of the Indictment in Crim. No. 3:15CR67(RNC) charging him with Possession of Ammunition By a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In addition, the defendant agrees to plead guilty to the two count Indictment in Crim. No. 3:16CR106(RNC) which charges him with Possession of Firearms by a Convicted Felon (Count One) and Illegal Possession of an Unregistered Silencer (Count Two), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 26 U.S.C. §§ 5841, 5845(a)(7), 5861(d) and 5871, respectively.

      The defendant also agrees to admit that he violated the terms and conditions of the three-year periods of supervised release imposed by the Court on May 4, 2013 in Criminal Numbers 3:12CR72 (RNC) and 3:12CR34(RNC).

A. Ryan McGuigan, Esq.
April 6, 2017
Page-2

He understands that to be guilty of these offenses the following essential elements of the offenses must be satisfied:

As to Count One of the Indictment in Crim. No. 3:15CR67(RNC) and Crim. No. 3:16CR106 (RNC), the essential elements of a violation of Section 922(g)(1), as relevant here, are that:

> First:  The defendant knowingly possessed the firearms/ammunition identified in the indictment;
>
> Second:  The defendant previously had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year; and
>
> Third:  The possession of the firearms/ammunition was in or affecting commerce.

As to Count Two of the indictment in Crim. No. 3:16CR106(RNC), the essential elements of a violation of Section 5861(d), as relevant here, are that:

> First:  The defendant possessed or received a firearm, as defined at 26 U.S.C. § 5845(a);
>
> Second:  The defendant knew of the features of the firearm that make it subject to the statute; and
>
> Third:  At the time of possession, the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

(For purposes of Count Two, a "firearm" is . . . (7) any silencer (as defined by section 921 of title 18, United States Code).  26 U.S.C. § 5845(a)(7).)

With respect to the violations of the terms and conditions of the defendant's supervised release, the evidence must establish by a preponderance of the evidence that the defendant violated the terms and conditions of his supervised release by, in this instance, committing another federal, state, or local offense.

**THE PENALTIES**

All three of the offenses carry maximum penalties as follows:

A. Ryan McGuigan, Esq.
April 6, 2017
Page-3

Each count carries a maximum penalty of ten (10) years' imprisonment. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three (3) years, to begin at the expiration of any term of imprisonment imposed. The defendant understands that should he violate any condition of the supervised release during its term, he may be required to serve a further term of imprisonment equal to the period of up to two years with no credit for the time already spent on supervised release. Further, the defendant would be subject to an additional term of supervised release of up to 3 years less any time served for a violation.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, in this case the special assessments would total $300. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted. The defendant agrees to pay the special assessment on or before the date of sentencing unless he establishes an inability to pay on or before the date of sentencing through the financial disclosure to the Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

Forfeiture

Pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), the defendant agrees to forfeit his interest in the firearm and ammunition identified in Counts One and Two of the Indictment in Crim. No. 3:15CR67(RNC), namely one .38 caliber Colt Cobra revolver, bearing serial number M54544, and the multiple rounds of ammunition identified in the Indictment. In addition, the defendant agrees to forfeit his interest in the firearms and silencer identified in Counts One and Two of the Indictment in Crim. No. 3:16CR106(RNC), namely a .22 caliber Browning, Model Buckmaster pistol, bearing serial number 655NT30283, a 9mm Walther, Model P38 pistol, bearing serial number 9544, a .380 caliber RPB Industries, Model M11-A1 pistol, bearing serial number SAF3804283, and a black cylindrical device designed to silence or diminish the report of a firearm, which was not registered to the defendant in the National Firearms Registration and Transfer Record. As to the charges contained in Count Two of the Indictment Crim. No. 3:15CR67(RNC), the defendant acknowledges that he sold the firearm and ammunition to a convicted felon in violation of 18 U.S.C. § 922(d)(1).

As to the charges contained in Counts One and Two of the Indictment in Crim. No. 3:16CR106(RNC), for purposes of forfeiture the defendant acknowledges that he possessed the firearms and silencer in violation of 18 U.S.C. § 922(g)(1) and 26 U.S.C. §§ 5841, 5845(a)(7), 5861(d) and 5871.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-4

The defendant also agrees to waive all interests in each of the assets listed in this section (hereinafter, the "forfeitable assets"), in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for each of the forfeitable assets and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement. The defendant further agrees to waive all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds. The defendant also understands and agrees that by virtue of his pleas of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to §3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his

A. Ryan McGuigan, Esq.
April 6, 2017
Page-5

intention to enter a plea of guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level in the pending Indictments is calculated as follows: under U.S.S.G. §§ 2K2.1(a)(3)(B) the firearms and silencer offenses are base offense level 20.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-6

Two (2) points are added under § 2K2.1(b)(1)(A) because there were between 4 and 7 firearms involved in the two indictments. The defendant acknowledges and understands that the Government will argue that an additional 4 points are added under § 2K2.1(b)(6)(B) because the defendant had reason to believe a firearm would be used in the commission of a felony offense. Thus, the defendant's total adjusted base offense level is 26. The defendant reserves his right to object to the additional 4 point enhancement under § 2K2.1(b)(6)(B).

Three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 23 if the Government's calculation is correct, or 19 if the defendant's objection to the 4 point enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is sustained.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category III. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 23, assuming a Criminal History Category III, would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000, U.S.S.G. § 5E1.2(c)(3). If the Court calculates the defendant's base offense level to be 19, then his guideline range would be 37-46 months, and his fine range would be $10,000 - $100,000. The defendant is also subject to a supervised release term of up to 3 years. U.S.S.G. § 5D1.2(b).

Further, the Guidelines range for the violation of his supervised release under U.S.S.G. § 7B1.4(a) is 12 to 18 months. In addition, the defendant could receive a period of supervised release of up to life because the underlying convictions in Criminal No. 3:12CR34 (RNC) were for offenses under Title 21 USC § 841(a)(1) and 21 USC § 846.

The defendant reserves his right to seek a departure or non-Guidelines sentence based on the defendant's age, health and related matters, and the Government reserves its right to object and seek whatever sentence it deems appropriate. Nor will either party suggest that the Probation Department consider a departure or adjustment not set forth herein, or suggest that the Court *sua sponte* consider a departure or adjustment not identified above.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-7

Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence

      The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court in the event that the sentence does not exceed 89 months (if the Court determines the defendant's adjusted base offense level is 23) or 64 months (if the Court determines that the defendant's adjusted base offense level is 19), a 3 year period of supervised release, a $200,000 fine, (if the defendant's adjusted base offense level is 23), or $100,000 fine (if the defendant's adjusted base offense level is 19), a $300 special assessment, and forfeiture of the firearms and ammunition identified in the pending indictments and stipulation of offense conduct set forth hereinafter, if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

Information to the Court

      The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

Waiver of Trial Rights and Consequences of Guilty Plea

      The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

      The defendant understands that he has the right to plead not guilty or to persist in those pleas if they have already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, and the right to compulsory process for the attendance of witnesses to testify in his defense. The defendant understands that by pleading

guilty he waives and gives up those rights and that, if the pleas of guilty are accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's pleas of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offenses to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the

A. Ryan McGuigan, Esq.
April 6, 2017
Page-9

defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

### COLLATERAL CONSEQUENCES

The defendant further understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and may thereby be deprived of certain federal benefits as provided in 21 U.S.C. § 862 and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

### SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty pleas, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conduct which forms the basis of the pending Indictments and the Supervised Release violation petition in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-10

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

JOHN H. DURHAM
ASSISTANT UNITED STATES ATTORNEY

A. Ryan McGuigan, Esq.
April 6, 2017
Page-11

      The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____      _4/6/17_____
ROBERT V. GENTILE                           Date
The Defendant

      I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____      _4/6/17_____
A. RYAN McGUIGAN, ESQ.                Date
Attorney for the Defendant

A. Ryan McGuigan, Esq.
April 6, 2017
Page-12

## STIPULATION OF OFFENSE CONDUCT

The defendant Robert V. Gentile and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to charges contained in the Indictments pending against him in Crim. No. 3:15CR67(RNC) and Crim. No. 3:16CR106(RNC):

Based on a series of controlled sales of prescription drugs to a cooperator and the seizure of contraband, including, among other items, multiple firearms, ammunition and silencers during a February 10, 2012 search of his residence located at 69 Frances Drive, Manchester, CT, Robert Gentile was indicted on federal drug and firearms charges and ordered detained. The defendant Gentile subsequently pleaded guilty to each of the drug, firearms and silencer charges contained in two Indictments, and he was sentenced to 30 months' imprisonment, to be followed by 3 years of supervised release.

The defendant completed his prison sentence on April 16, 2014, at which point he started his 3 year term of supervised release. Under the terms and conditions of his supervised release, the defendant was required to spend the first 90 days of the 3 year term in home detention. Upon his release to supervision, the defendant began having contact with a cooperating individual (hereinafter CW-1). CW-1 and Gentile had known one another for many years, in the past the two men committed crimes together, and the defendant knew CW-1 to be a convicted felon. Among other things told to CW-1 *after* the defendant's 2014 release from federal prison was the fact that in his earlier case the FBI seized a lot of his (Gentile's) guns, but they had not gotten them all.

On February 22, 2015, CW-1 met with the defendant. During the meeting, CW-1 told Gentile that he needed a firearm because he (CW-1) was owed a debt from a drug transaction which the debtor was refusing to pay. The defendant Gentile stated that CW-1 should carry a firearm and stated that he (Gentile) should carry one as well. The defendant advised CW-1 that he knew of an individual who could provide each of them with firearms and that the cost would be $1,000 for each weapon. CW-1 agreed to the price, at which point the defendant advised CW-1 that it would take a couple of days for him (Gentile) to acquire the firearms.

On February 27, 2015, CW-1 and the defendant had another meeting during which they discussed the proposed sale of the firearm. The defendant told CW-1 that he would call CW-1 over the weekend, and added that if he asked CW-1 the question, "Have you spoken with your cousin?" that would mean that Gentile had been successful in obtaining a firearm for CW-1. The plan then would be to meet on Monday, March 2, 2015 to complete the gun sale.

On March 1, 2015, in the early evening, the defendant contacted CW-1 telephonically and used cryptic language to instruct CW-1 to immediately drive to the defendant's house to pick up the gun. At the time, there were blizzard-like conditions outside so CW-1 told the defendant that due to CW-1's health condition and the blizzard-like weather outside, the gun buy would have to take place the next morning.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-13

On March 2, 2015, CW-1 met with the defendant at the defendant's residence located at 69 Frances Drive in Manchester, Connecticut for the purpose of purchasing the firearm for the previously agreed upon price of $1,000. Prior to proceeding to this meeting, CW-1's person and CW-1's vehicle were searched thoroughly by FBI personnel for weapons or other contraband. None were found. CW-1 was then provided with recording equipment and $1,000 in government funds. He drove to Gentile's residence while continuously being observed by an FBI surveillance team. The surveillance team maintained surveillance of CW-1 all the way to the defendant's, when he entered the house, when he walked out of the house, and then all the way to a predetermined location where CW-1 met back up with the Agents.

When CW-1 entered the defendant's residence, the defendant brought him into a small room near the foyer. The defendant unzipped a couch cushion and produced a handgun which was contained in a blue cloth that had been secreted inside the couch cushion. The CW-1 counted out $1,000 which could be heard on the recording and handed the money to the defendant. The defendant then provided the cloth with the gun inside to CW-1. After purchasing the firearm, CW-1 left the defendant's residence.

After leaving 69 Frances Drive, CW-1 was surveilled continuously until he made physical contact with the investigators at the predetermined location at which point they took possession of the handgun and recording equipment from CW-1. The handgun was determined to be a .38 Colt Cobra revolver, serial number M54544, loaded with five (5) rounds of Smith & Wesson .38 Special ammunition.

Documentary evidence kept and maintained by the State of Connecticut establishes that the weapon was sold/transferred to the defendant sometime in August 1976. In addition, DNA evidence in the case showed that the defendant's DNA profile was present on the blue cloth in which the gun was wrapped.

The defendant acknowledges that the five rounds of Smith & Wesson ammunition in the chambers of the .38 caliber Colt revolver were manufactured outside of the State of Connecticut and, therefore, the ammunition necessarily traveled in interstate commerce. (The .38 caliber Colt firearm itself was manufactured and sold within the State of Connecticut.)

Thereafter, on May 2, 2016, Special Agents of the FBI executed an unrelated federal search warrant at the defendant's 69 Frances Drive residence. During the course of conducting the search, the Agents found and seized three firearms, namely a .22 caliber Browning, Model Buckmaster pistol, bearing serial number 655NT30283, a 9mm Walther, Model P38 pistol, bearing serial number 9544, and a .380 caliber RPB Industries, Model M11-A1 pistol, bearing serial number SAF3804283, and a silencer, that is, a black cylindrical device designed to silence or diminish the report of a firearm.

A. Ryan McGuigan, Esq.
April 6, 2017
Page-14

Further, the defendant acknowledges and agrees that prior to May 2, 2016, he had been convicted of felony offenses on multiple occasions, including most recently his convictions on federal charges of Possession of Controlled Substances with Intent to Distribute and Distribution, Possession of Firearms and Ammunition by a Convicted Felon, and Possession of Unregistered Firearms (Silencers).

Further, the defendant acknowledges and agrees that prior to their seizure, each of the firearms seized from the defendant's residence on May 2, 2016 had traveled in interstate and/or foreign commerce and that the seized silencer was not registered in the National Firearms Registration and Transfer Record.

Finally, the defendant acknowledges that he committed a criminal offense while on Supervised Release and, further, associated with persons he knew to be previously convicted felons while on Supervised Release.

_____
ROBERT V. GENTILE
The Defendant

_____
JOHN H. DURHAM
ASSISTANT U.S. ATTORNEY

_____
A. RYAN McGUIGAN, ESQ.
Attorney for the Defendant